IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02747-MEH

GAS PRODUCTS CORPORATION,

    Plaintiff,

v.

BTU MARKETING, LLC, and
MONTIGO DEL RAY CORPORATION,

    Defendants.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim Pursuant to F.R.C.P. 12(b)(6) [filed December 29, 2016; ECF No. 30]. The Motion is fully briefed, and the Court finds that oral argument, which the parties did not request, will not assist in the adjudication of the Motion.[1] The Court holds that Plaintiff's first, second, and fourth causes of action sufficiently allege a claim for relief. However, Plaintiff's third cause of action fails to state a claim. Accordingly, Defendants' Motion is granted in part and denied in part.

## BACKGROUND

**I.    Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in its Amended Complaint, which are taken as true

---

[1] The parties consented to this Court's jurisdiction pursuant to D.C. Colo. LCivR 40.1 on December 7, 2016. *See* ECF No. 17.

for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff is a wholesale distributor of heating equipment. Am. Compl. ¶ 6, ECF No. 24. Defendant Montigo Del Ray Corporation ("Montigo") is a designer and manufacturer of custom gas fireplaces, gas inserts, stoves, and related products. *Id.* at ¶ 7. Defendant BTU Marketing, LLC ("BTU") is Montigo's representative. *Id.* at ¶ 17. Plaintiff was the exclusive distributor of Montigo's products for Colorado, New Mexico, Wyoming, Utah, and Idaho. *Id.* at ¶ 8. Plaintiff developed comprehensive customer lists, which included past, current, and potential purchasers of Montigo's products. *Id.* at ¶¶ 10–11. To maintain the secrecy of its customer list, Plaintiff stored it in a secure location and prohibited employees from disseminating the information other than as required during the normal course of business. *Id.* at ¶ 14. When Plaintiff's customers ordered fireplaces, Plaintiff would disclose the customers' information to Montigo for shipping purposes. *Id.* at ¶ 15. Montigo represented to Plaintiff that it would not disseminate the disclosed information to third parties. *Id.* at ¶ 16.

During the course of the parties' business relationship, Plaintiff began to notice a significant decrease in its annual sales of Montigo products. *Id.* at ¶ 19. As a result, Plaintiff contacted many of its customers, who informed Plaintiff that Defendants had been calling Plaintiff's customers to market and sell Montigo products directly. *Id.* at ¶ 21. Additionally, Plaintiff learned through a BTU employee that Montigo provided Plaintiff's customer list to BTU and instructed BTU to appropriate Plaintiff's current and prospective customers. *Id.* at ¶ 18. As a result of Defendants' scheme to appropriate Plaintiff's customer information, Plaintiff has lost approximately $1,000,000 in annual sales. *Id.* at ¶ 24.

## II. Procedural History

Based on these factual allegations, Plaintiff initiated this lawsuit in Colorado state court on August 25, 2016. *See* Compl., ECF No. 2. Defendants removed the case to this Court on November 9, 2016. Notice of Removal, ECF No. 1. Thereafter, Plaintiff filed an Amended Complaint. ECF No. 24. Plaintiff alleges four causes of action: (1) Misappropriation of Trade Secrets, (2) Civil Conspiracy, (3) Interference with Existing Contractual Relationships, and (4) Interference with Prospective Contractual Relationships. *Id.* at ¶¶ 26–50.

Defendants responded to Plaintiff's Amended Complaint by filing the present Motion. Defs.' Mot. to Dismiss, ECF No. 30. First, Defendants argue Plaintiff fails to state a misappropriation claim, because Plaintiff fails to allege wrongful means by which Defendants misappropriated its customer list. *Id.* at 4–5. According to Defendants, the only restriction Plaintiff placed on Montigo's use of the customer list was that Montigo could not disclose the information to a third party. *Id.* at 4. Because BTU is Montigo's representative, Defendants contend Montigo did not violate this restriction. *Id.* Next, Defendants assert the Court should dismiss Plaintiff's civil conspiracy claim, because Plaintiff does not allege a wrongful act to which the Defendants conspired. *Id.* at 6–7. Third, Defendants argue that Plaintiff's claim for interference with existing contractual relations fails, because Plaintiff does not allege Defendants committed a wrongful action that caused Plaintiff's customers to breach an existing contract. *Id.* at 7–8. Lastly, Defendants contend Plaintiff does not state a claim for tortious interference with prospective business advantage, because Plaintiff fails to allege Defendants committed any underlying tortious conduct. *Id.* at 8.

Plaintiff responded to Defendants' Motion on January 19, 2017. Pl.'s Resp. to Defs.' Mot. to Dismiss, ECF No. 31. Plaintiff argues it alleges a misappropriation claim, because Montigo

disclosed Plaintiff's customer information under circumstances where it had a duty to keep the information secret or limit the information's use. *Id.* at 4–5. As to Plaintiff's claims for civil conspiracy and interference with prospective business relations, Plaintiff argues that Defendants committed the wrongful acts of misappropriating Plaintiff's customer lists and making statements to customers regarding Plaintiff's inability to pay bills. *Id.* at 5–6, 8–9. Plaintiff also argues it has alleged an interference with existing contractual relations claim, because Defendants contacted Plaintiff's existing customers "in an effort to interfere with [Plaintiff's] ongoing business relations." *Id.* at 8. Defendants filed a Reply on January 27, 2017. ECF No. 32.

## **LEGAL STANDARDS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d

1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

## ANALYSIS

Defendants' Motion to Dismiss requires the Court to determine whether Plaintiff sufficiently alleges a cause of action under Colorado law. The Court will address each of the claims in Plaintiff's Amended Complaint in turn.

**I.     Misappropriation of Trade Secrets**

To state a claim for misappropriation of trade secrets under Colorado law, the plaintiff must show that it possessed a trade secret and that the defendant misappropriated that secret. *See* Colo. Rev. Stat. § 7-74-102; *L-3 Commc'n Corp. v. Jaxon Eng'g & Maint., Inc.*, 125 F. Supp. 3d 1155, 1180 (D. Colo. 2015). Colorado law defines a trade secret as "any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value." Colo. Rev. Stat. § 7-74-102(4).

Misappropriation means:

(a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(b) Disclosure or use of a trade secret of another without express or implied consent by a person who:
    (I) Used improper means to acquire knowledge of the trade secret; or
    (II) At the time of disclosure or use, knew or had reason to know that such

>   person's knowledge of the trade secret was:
>   (A) Derived from or through a person who had utilized improper means to acquire it;
>   (B) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>   (C) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>   (III) Before a material change of such person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Colo. Rev. Stat. § 7-74-102(2). Therefore, Colorado law defines misappropriation broadly "to include virtually any improper acquisition, disclosure, or use of a trade secret . . . ." *Gognat v. Ellsworth*, 259 P.3d 497, 501 (Colo. 2011).

Here, the Court finds that Plaintiff has sufficiently alleged a claim for misappropriation of trade secrets. Although Defendants deny the existence of a trade secret, they do not argue that Plaintiff has insufficiently alleged its customer list is a trade secret. *See* Defs.' Mot. 4 n.1. Moreover, the Colorado Court of Appeals has held that where the owner of a customer list has taken efforts to maintain it secrecy, the list may be considered a trade secret. *Network Telecomm., Inc. v. Boor-Crepeau*, 790 P.2d 901, 902–03 (Colo. App. 1990). Because Plaintiff contends that it took reasonable efforts to maintain the secrecy of its customer lists, Plaintiff has sufficiently alleged the existence of a trade secret. *See* Am Compl. ¶ 14

Next, taking Plaintiff's allegations as true, Defendants misappropriated Plaintiff's customer information. Under Colo. Rev. Stat. § 7-74-102(2)(b)(II)(B), misappropriation occurs when a party who acquired a trade secret under circumstances giving rise to a duty to limit its use discloses or uses that secret without the owner's consent. Plaintiff alleges that it "provide[d] limited data on customers to Montigo *for shipping purposes*." Am. Compl. ¶ 15 (emphasis added). Therefore, Plaintiff disclosed its customer information under the assumption that Montigo would limit use of

the information to shipping Montigo's products. Notwithstanding this, Montigo allegedly told BTU to contact Plaintiff's customers so that Defendants could bypass Plaintiff and do business with the customers directly. *Id.* at ¶ 31. Therefore, Montigo used Plaintiff's customer list without Plaintiff's consent and for a purpose other than that for which it acquired the customer information.

The Court finds the Colorado Court of Appeals' holding in *Mineral Deposits Ltd. v. Zigan* instructive. 773 P.2d 606 (Colo. App. 1988). In that case, the court held that "if a trade secret is divulged under an express or implied restriction of nondisclosure or nonuse, a party who engages in unauthorized use of the information will be liable in damages to the owner of the trade secret." *Id.* at 608. Because the plaintiff disclosed its trade secret to the defendant for the express purpose of testing a product, the defendant was under an implied duty not to use the trade secret for purposes other than testing. *Id.* Similarly, because Plaintiff disclosed its customer information only to allow Montigo to ship products, Montigo had a duty to use the customer list only for shipping. When Montigo allegedly used the information "for [its] own financial gain," it breached this duty. *See* Am. Compl. ¶ 31,

Defendants contend that Plaintiff fails to allege a misappropriation claim, because the only restriction on Montigo's use of the customer information was that it could not disclose the information to third parties. Defs.' Mot. 4. According to Defendants, because BTU is not a third party, Montigo did not improperly use or disclose the information. *Id.* However, Plaintiff does not contend that Defendants misappropriated Plaintiff's information solely by disclosing it to BTU. Instead, Plaintiff alleges Defendants misappropriated Plaintiff's customer list by using it to secure Plaintiff's customers. *See* Am. Compl. ¶ 31. Therefore, even if Montigo did not breach its express agreement with Plaintiff not to disclose the information to third parties, Montigo breached its

implied duty to not use the information other than for shipping purposes.

Additionally, Plaintiff sufficiently alleges BTU had reason to know that Montigo acquired the information under a duty to limit its use. According to Plaintiff, Defendants agreed to "take customers from [Plaintiff] and divert them for their own financial gain." *Id.* at ¶ 37. BTU knew or reasonably should have known that Plaintiff did not provide Montigo with its customer information so that Montigo could bypass Plaintiff and gain the customers' business directly. Therefore, Plaintiff also alleges a misappropriation claim against BTU.

## II.   Civil Conspiracy

Plaintiff's second cause of action alleges a claim for civil conspiracy. Am. Compl. ¶¶ 34–39. To state a claim for civil conspiracy under Colorado law, a plaintiff must show: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result." *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995). Defendants argue Plaintiff fails to state a conspiracy claim, because Plaintiff has not alleged an unlawful or wrongful act. Defs.' Mot. 6. Because the Court holds that Plaintiff sufficiently alleges a misappropriation claim, Defendants' argument is without merit. By misappropriating Plaintiff's customer list for their own financial gain, Defendants allegedly committed an unlawful overt act. Therefore, Plaintiff has sufficiently alleged a claim for common-law conspiracy under Colorado law.[2]

---

[2] Defendants also argue that the Court should dismiss Plaintiff's civil conspiracy claim, because Plaintiff asserts the wrongdoing directly against both Defendants. Defs.' Mot. 7. Defendants rely on *Tara Woods Limited Partnership v. Fannie Mae*, 731 F. Supp. 2d 1103, 1121–22 (D. Colo. 2010) for the proposition that a plaintiff can allege civil conspiracy only if one of the defendants did not directly participate in the wrongdoing. Defs.' Mot. 7. According to Defendants, because Plaintiff alleges its misappropriation claim against both Defendants, its civil conspiracy claim is improper. *Id.* However, Colorado courts have permitted direct and derivative claims against both defendants. In *Double Oak Construction, LLC v. Cornerstone Development*

**III.     Interference with Existing Contractual Relationships**

Plaintiff's third claim for relief alleges that Defendants intentionally interfered with Plaintiff's existing contractual relationships. Am. Compl. ¶¶ 40–45. "Tortious interference with a contract requires that: (1) the plaintiff have a contract with another party, (2) the defendant knew or should have known of such contract's existence, (3) the defendant intentionally induced the other party to the contract not to perform the contract with the plaintiff, and (4) the defendant's actions caused plaintiff to incur damages." *Telluride Real Estate Co. v. Penthouse Affiliates, LLC*, 996 P.2d 151, 155 (Colo. App. 1999); *see also Mem'l Gardens, Inc. v. Olympian Sales & Mgmt. Consultants, Inc.*, 690 P.2d 207, 210 (Colo. 1984). Importantly, the tort requires that the plaintiff "plead and prove a valid contract with a third party." *Nutting v. RAM Sw., Inc.*, 106 F. Supp. 2d 1121, 1127 (D. Colo. 2000).

In *Nutting*, the defendants asserted a counterclaim for "interference with business and contractual relations." *Id.* at 1127. The court stated that Colorado law recognizes two separate interference torts: interference with contract and interference with business relations. *Id.* at 1128. According to the court, defendants did not assert a claim for interference with contract, because the defendant's counterclaim alleged only that customers discontinued doing business with the

---

*International, LLC*, the sole case the court relied on for its relevant holding in *Tara Woods*, the Colorado Court of Appeals affirmed a trial court verdict against both of the defendants for fraudulent transfer and civil conspiracy. 97 P.3d 140, 147 (Colo. App. 2003). In upholding the trial court's civil conspiracy verdict, the court stated that the "fraudulent conveyances . . . were the legal wrong to which defendants conspired." *Id.* at 146. Additionally, the court noted that "[c]ivil conspiracy is an 'independent tort,' . . . Thus, civil conspiracy provides plaintiffs with damages remedies independent of those provided" by the underlying tort. *Id.* at 148 (quoting CJI-CIV 4th 27:1). Moreover, in *Sonoco Products Co. v. Johnson*, the court affirmed a trial court verdict "against both defendants, on [the plaintiff's] misappropriation of trade secrets and civil conspiracy claims." 23 P.3d 1287, 1288 (Colo. App. 2001).

defendants as a result of the plaintiff's actions. *Id.* at 1131. Since "the element of contract [was] missing from th[e] claim," the court construed the claim as one for interference with business advantage. *Id.* at 1128–31.

Similarly, Plaintiff fails to allege the existence of a specific contract that it had with another party. Instead, Plaintiff alleges only that "numerous customers have ceased purchasing products through [it]." Am. Compl. ¶ 44; *see also* Pl.'s Resp. 8 (arguing that Plaintiff pleads breach of an existing contract by alleging that Defendants contacted numerous customers "in an effort to interfere with [Plaintiff's] ongoing business relations"). Moreover, Plaintiff does not allege that it became aware of Defendants' conduct because of specific contracts that its customers breached. Instead, Plaintiff realized that Defendants were contacting its customers because of a "significant decrease in its annual sales of Montigo fireplaces." *Id.* at ¶ 19. Therefore, similar to *Nutting*, Plaintiff alleges only that its customers discontinued doing business with it as a result of Defendants' conduct. Because Plaintiff does not allege an existing contract, Plaintiff fails to state a claim for interference with existing contractual relations.

**IV.   Interference with Prospective Contractual Relationships**

Plaintiff's last claim for relief asserts that Defendants wrongfully interfered with Plaintiff's prospective business advantage. Am. Compl. ¶¶ 46–50. The Court holds that Plaintiff sufficiently alleges this claim. To prove interference with prospective business advantage, "it is not necessary to prove an underlying contract. It is sufficient to show intentional and improper interference preventing formation of a contract." *Dolton v. Capitol Fed. Sav. & Loan Ass'n*, 642 P.2d 21, 23 (Colo. App. 1981). Defendants' sole argument for dismissal of this claim is that Plaintiff has not alleged any "wrongful conduct that is the foundation for such a claim." Defs.' Mot. 8. Because the

Court holds that Plaintiff has stated a misappropriation claim, this argument lacks merit. Plaintiff alleges that because of Defendants' intentional misappropriation of Plaintiff's customer list and Defendants' statements to Plaintiff's past, present, and prospective customers,[3] the "customers elected to purchase products directly from Montigo and/or BTU." Am. Compl. ¶ 49. Therefore, Plaintiff sufficiently alleges that Defendants' improper actions interfered with the formation of a contract.

## CONCLUSION

In sum, because Plaintiff alleges that Defendants used Plaintiff's customer list for a reason other than that for which Plaintiff disclosed it, the Court holds that Plaintiff states a valid claim for misappropriation of trade secrets. This is sufficient to establish wrongful conduct underlying Plaintiff's claims for civil conspiracy and tortious interference with prospective business relations. However, because Plaintiff does not allege that Defendants' conduct caused a third party to breach an existing contract, the Court dismisses Plaintiff's third cause of action. Accordingly, Defendants' Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim Pursuant to F.R.C.P. 12(b)(6) [filed December 29, 2016; ECF No. 30] is **granted in part and denied in part**.

---

[3] Defendants argue that Plaintiff fails to identify any wrongful statements. Defs.' Mot. 6, 8. According to Defendants, whether Plaintiff had poor credit with Montigo or could not obtain products from Montigo are issues solely within Montigo's control, and therefore, cannot be wrongful. *Id.* Although Defendants are correct that Plaintiff's credit standing with Montigo is a matter entirely within Montigo's control, this does not foreclose the possibility that it was wrongful for Defendants to contact Plaintiff's customers and share these statements.

Entered and dated at Denver, Colorado, this 7th day of February, 2017.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge